UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.:

MICKEL ROACH and
GRACE DECKER

 Plaintiffs,

v.

LEGACY PROPERTIES, LLC., and
MONICA HULZING

 Defendants.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

COMES NOW, Plaintiffs, Mickel Roach and Grace Decker, a person associated with Mickel Roach ("Plaintiffs"), by and through the undersigned counsel, hereby sues Defendants, Legacy Properties, LLC., and Monica Hulzing ("Defendants") for injunctive relief and damages pursuant to 42 U.S.C. § 3604 of the Fair Housing Act, as amended ("FHAA") and alleges:

## JURISDICTION

1. This is an action for damages, declaratory and injunctive relief pursuant to the Fair Housing Act and the Florida Fair Housing Act. This Court is vested with original jurisdiction under 28 U.S.C. §1331 and supplemental jurisdiction under 28 U.S.C. §1367.

2. Venue is proper in the Court, pursuant to 28 U.S.C. §1391(b) in that all events giving rise to this lawsuit occurred within the Middle District of Florida and the subject premises is located within the jurisdiction of this Court.

3. Defendants are authorized to conduct, and is/are conducting, business within the State of Florida and within the jurisdiction of this court.

## PARTIES

4. Plaintiff, Mickel Roach is a resident of the State of Florida and resides in Pinellas County, Florida. Plaintiff has a disability (handicapped per the FHAA) within the meaning of 42 U.S.C. § 3602 (h)(1), having neurological disabilities. Additionally, Plaintiff also suffers seizures and has difficulty with short- and long-term memory. Plaintiff is substantially limited in the major life activity of thinking, concentrating, and working. Plaintiff Grace Decker is a person associated with Plaintiff Roach who intended to live in the subject dwelling with Roach and to be a signatory on the lease. As further used herein in the singular, "Plaintiff" refers to Roach. As further used herein in the plural, "Plaintiffs" refers to Roach and Decker.

5. Plaintiffs are "aggrieved persons" under the law who has been injured by Defendant's discriminatory housing practice. Plaintiffs will continue to suffer injuries because of Defendant's continuous discriminatory housing practices for which there is no adequate remedy at law.

6. Defendant, Legacy Properties, LLC., is a "person" under 42 U.S.C. § 3602(d) and Florida company organized to manage and lease residential dwellings. Defendant leases or caused to be leased a "dwelling" as defined 42 U.S.C. § 3602(b) of the Fair Housing Act and the Florida Fair Housing Act.

7. Defendant, Monica Hulzing, is a "person" under 42 U.S.C. § 3602(d) who manages and leases residential dwellings. At all-time relevant, Hulzing was acting as an agent of Defendant Legacy Properties, LLC., and Legacy is vicariously liable for Hulzing's actions or omissions.

## FACTS

8. On January 12, 2021, Plaintiff began searching for a home to lease for him and his girlfriend, Grace Decker. He found a listing at 1119 Gould St., in Clearwater, Florida. Plaintiff found the listing that was published on Zumper.com. The company that published the listing was Legacy Properties LLC., in Tarpon Springs, Florida.

9. Plaintiff spoke with Monica Hulzing, a property management professional with Legacy Properties. Hulzing took an application fee from Plaintiff and Grace Decker. Hulzing ran background and credit checks on Plaintiff and Grace Decker. Both were approved on the same day. Hulzing told Plaintiff she had never seen a more qualified applicant as her time as property manager.

10. During this same meeting, Plaintiff told Hulzing that he and Grace

Roach, et al v. Legacy Properties, et al
Complaint for Injunctive Relief

Decker were disabled because they were that poisoned by carbon monoxide in their previous residence. Plaintiff and Ms. Decker were injured and left with seizures and other neurological disabilities including impeded cognitive ability and severe short term memory loss.

11. Plaintiff told Hulzing that he was reassured because he was working with a professional property management company instead of a private landlord, who caused the carbon monoxide poisoning. Ms. Hulzing told Plaintiff that she was a professional and that neither he nor Grace had anything to worry about, because the house would be professionally cleaned and safe when we move in.

12. Plaintiff informed Ms. Hulzing that he and Decker were staying in a hotel that was costing $3000 per month, because they had not been able to find an affordable house in this aggressive market that fit all their requirements. Plaintiff needed parking, and a (2) two-car garage close to the downtown area. Even though he can operate a motor vehicle legally, due to Plaintiff's disabilities, he drives only when required.

13. Ms. Hulzing gave Plaintiff access to the tenant portal and sent us a new tenant welcome email. Plaintiff and Decker paid her the deposit and first month's rent. Plaintiff and Decker had a move in date of March 1, 2021.

14. The manager of the hotel warned Plaintiff and Decker that their busy season would be in full swing soon, as such they would need to know how many

days to reserve for them. Plaintiffs advised him maximum until March 1, 2021, they would be gone by them. The manager told Plaintiff and Decker that it was very important that they get the move out date right, because the price would not just be unaffordable, there would not be rooms available.

15. On or about the last week of February, Ms. Hulzing informed Plaintiff and Decker that the current tenant would not be moving out earlier than March 1, 2021, as she originally expected. Plaintiff told her that he had up until the first week of March 1, 2021, to move out of the hotel.

16. On or about the March 2, 2021, Ms. Hulzing scheduled an appointment with Plaintiff and Decker to receive the key and do a final walk-through inspection. The next morning, she canceled this meeting, claiming that her child was sick, but Hulzing told Plaintiff that the key was left at the house. Hulzing told Plaintiff that if the house is in move in condition (she claimed that she had not inspected it yet), Plaintiff and Decker could move in that day. Plaintiff agreed.

17. Plaintiff and Decker visited the house. Once they entered, they encountered an overpowering odor which caused Plaintiff and Decker's noses to burn and made them both dizzy. Plaintiff and Decker looked in the laundry room and found a large black area which was covered in mold. Plaintiff surmised that the dryer caused the mold because it was not vented outside. Given their disabilities and previous poisoned by gas appliances that were not vented properly, they were

alarmed and concerned. The short time in the space had left both Plaintiff and Decker lightheaded.

18. After sending messages to Hulzing regarding the mold and the visit, Hulzing requested that them to put the key back under the mat and leave. She texted that mold was a four-letter word in this business and that she would give their money back ASAP. Plaintiff explained to her that they were not trying to get out of lease. They simply wanted to make sure that the dwelling unit space would exacerbate their conditions.

19. Hulzing claimed that she would have a contractor come out. Later that day, a cleaning company confirmed the black substance in the unit was mold and removed it. After it was removed, the odor dissipated. Plaintiff told Ms. Hulzing that the space needs to be tested for residual mold, and if there is residual mold, a professional need to remove it. Again, Plaintiff was concerned that the mold could cause him to have a seizure.

20. Ms. Hulzing called Plaintiff and told him that she did not want to lease the house to him. Plaintiff told Hulzing that he had been waiting for almost 2 months for the rental and had expended a significant amount of money for the opportunity to lease it. Hulzing claimed that Plaintiff and Decker were overreacting, regarding the mold that was found in the house.

21. Hulzing asked Plaintiff whether he wanted to move into this house over

the weekend or if we wanted to wait until a deep cleaning was done. Plaintiff replied via text message that he would like a deep cleaning before moving into the home. Hulzing sent back a text and reprimanded Plaintiff for texting her after 5:00 pm. Hulzing further told Plaintiff that she does not communicate via text or take calls after 5pm. She wrote that this whole thing is turning into a "mess".

22. Shortly thereafter, within minutes, Ms. Hulzing called Plaintiff on the phone. She was talking very erratic and was very angry. She told Plaintiff that he was being difficult and making a big deal over the mold and that she had never dealt with a customer this difficult. She expressed that Plaintiff's mold sensitivity made her feel very uncomfortable. Plaintiff told Hulzing that if she was uncomfortable, then she should have the place tested and certified as mold was found in the property.

23. Hulzing began verbally attacking Plaintiff and began making baseless accusations. Plaintiff asked Hulzing to stop the personal attacks as he believed that he had done everything that she asked, and he treated her in a polite and respectful manner.

24. Hulzing told Plaintiff that she does not clean the home to make sure the mold was removed. Hulzing told Plaintiff that if he did not want the house "as is", (without any mold testing or cleaning) that she would lease to someone else. She told Plaintiff to take it or leave it. Plaintiff knew what she was trying to do and would not allow her to find a way to cause Plaintiff and his girlfriend to not lease from her.

25. Plaintiff decided to use Hepa filters as he believed that the mold problems could be alleviated by the filters. He advised Hulzing that he would sign the lease, but he correctly predicted to Grace Decker that the lease would contain "deal killing" language.

26. Hulzing sent the lease, but it was difficult for Plaintiff to understand because of his neurological conditions. Plaintiff visited a lawyer who advised that the lease contained non-standard provisions and was defective. Some parts of the lease were inconsistent with each other such as the provision requiring both Legacy properties and Plaintiff to be responsible for lawn maintenance. Hulzing sent Plaintiff messages in all caps saying, "SIGN THE LEASE".

27. Within 3 hours of signing the lease provided by Hulzing, Hulzing relisted the property. She also sent messages to Plaintiff advising that he was being extremely difficult and that he was the most difficult client that she ever dealt with in 23 years. She told Plaintiff that she could rent the property to anyone else, and they would not give her near this amount of grief. Despite concerns, Plaintiff signed the lease and dropped it at Hulzing's office.

28. Hulzing refused to give Plaintiff the key back. Plaintiff emailed Hulzing and she responded to the emails indicating that she was not going to lease to Plaintiff under any circumstances, even though Plaintiff was no longer requesting mold remediation or mold testing demand and had signed the lease provided by Hulzing.

29. Defendant deleted Plaintiffs from the tenant portal, refused to return the application fee and the credit card payment of the initial fee and on information and belief, quickly rented the subject dwelling unit to another person.

## COUNT I
## VIOLATION OF SECTION 804 (C) OF THE FAIR HOUSING ACT

30. Plaintiff adopts and realleges paragraphs 1-29 as if fully set forth herein and states as follows.

31. Plaintiff is a member of a protected class, being a person with a disability.

32. Defendant Hulzing made statements with respect to the sale or rental of a dwelling.

33. The statement indicated a preference, limitation, or discrimination on the basis of protected class.

## COUNT II
## VIOLATION OF SECTION 804 (f)(1) OF THE FAIR HOUSING ACT

34. Plaintiff adopts and realleges paragraphs 1-29 as if fully set forth herein and states as follows.

35. Plaintiff is a member of a protected class, being a person with a disability.

36. Plaintiff applied for and was qualified to rent the subject dwelling.

37. Plaintiff signed a lease to rent the subject dwelling, but Defendant

Hulzing refused to provide keys to the Plaintiff and removed him from the tenant portal.

38. On information and belief, Defendants rented the subject dwelling to a person that did not have neurologically based disabilities.

**WHEREFORE**, Plaintiffs, Mickel Roach and Grace Decker, a person associated with Mickel Roach, demand judgment against Defendants, Legacy Properties, LLC., and Monica Hulzing, to declare that the actions of Monica Hulzing, violated the Fair Housing Amendments Act, by discriminating against persons with disabilities; and award Plaintiffs, Mickel Roach and Grace Decker injunctive relief to prohibit such discriminatory actions, and extensive training on the requirements of the fair housing act, as well as compensatory and punitive damages, and their attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

**A JURY TRIAL FOR ALL SUCH ISSUES SO TRIABLE IN THIS MATTER.**

Respectfully Submitted on this March 1, 2023.

By: */s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
FBN: 628166
J. COURTNEY CUNNINGHAM, PLLC
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
T:  305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com